GODERICH, J.
The plaintiff, Harvey Levinson, appeals, and the defendant, Carnival Corporation [Carnival], cross-appeals, from a final judgment. We reverse, in part, and affirm, in part.
From the early 1960’s until his retirement, Levinson worked as an executive for Carnival and its predecessors. From 1972 through March 1989, he served as Carnival’s Senior Vice-President, Treasurer, and Chief Financial Officer, and from 1974 until July 1995, he was a member of Carnival’s Board of Directors.
On July 1, 1981, Carnival established a Deferred Compensation Plan for three executives, including Levinson. Levinson entered into a Deferred Compensation Agreement with Carnival that provided him with an annual retirement benefit. In exchange for this benefit, Levinson executed a non-compete clause and continued his employment with Carnival. Paragraph 16 of the Deferred Compensation Agreement provided:
Nothing contained herein shall in any way affect or interfere with the right of the Employee to share or participate in any retirement plan of the Corporation or any profit-sharing, bonus or similar plan in which he may be entitled to participate as an officer or employee of the Corporation.
In 1989, Levinson semi-retired. Although he stepped down from his titles, he continued serving as a member of the Board of Directors and continued working for Carnival at a reduced salary.
On January 1, 1989, Carnival adopted a Pension Plan. The Pension Plan was silent as to the interplay between its provisions and the existing Deferred Compensation Agreement. However, from 1989 onward, the annual Proxy Statements sent to Carnival shareholders contained a section entitled “Defined Benefit Pension Plan” that stated, “Pension benefits paid under the Pension Plan will be credited toward amounts payable under applicable deferred compensation agreements described above.” The “applicable deferred compensation agreements described above” referred to Levinson by name in the 1989 Proxy Statement and as “a former executive officer” in subsequent statements.
On December 30,1994, at age 65, Levinson retired. On January 6, 1995, the day Levin-son was to receive his first payment under the Deferred Compensation Agreement and the Pension Plan, Carnival advised him that the amount payable to him under the Deferred Compensation Agreement would be offset by the amount of his benefit payable under the Pension Plan. Thereafter, Carnival made such a deduction each month. In June 1995, Levinson filed suit alleging that such action constituted a breach of the Deferred Compensation Agreement.
In June 1996, Carnival further reduced Levinson’s monthly pension benefit stating that it had erroneously credited him for six years of participation in the Pension Plan. Carnival explained that Levinson was only entitled to credit for one year of participation in the Pension Plan and that he did not qualify for the additional five years of participation because he had failed to work the requisite number of hours for each of those years. In response, Levinson amended the complaint to include another count alleging that this decrease in pension benefits, that happened over a year after he had started collecting benefits, constituted a violation of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., and a breach of Carnival’s Pension Plan obligations.
Carnival answered the complaint, and the cause proceeded to non-jury trial. On the issue of the breach of the Deferred Compensation Agreement, the trial court found in favor of Carnival on the basis that Levinson, as a member of Carnival’s Board of Di *1162 rectors, had actual and constructive notice that benefits paid under the Pension Plan were to be credited against the Deferred Compensation benefits. On the issue of whether Carnival improperly reduced Levin-son’s Pension Plan benefits to reflect one year of participation in the plan, the trial court found in favor of Levinson and credited him with six years of participation in the plan. Levinson appeals, and Carnival cross-appeals, from the final judgment.
Levinson contends that the trial court erred by finding in favor of Carnival on the breach of Deferred Compensation Agreement claim because the agreement unambiguously and specifically provided that Levin-son’s participation in the agreement would not affect or interfere with his right to participate in any other retirement plan. Further, he argues that the terms of the Deferred Compensation Agreement could not be unilaterally modified by the disclaimer contained in the proxy statement. We agree.
“[A] contract once entered into may not thereafter be unilaterally modified;[sic] Subsequent modifications require consent and ‘a meeting of the minds’ of all initial parties to the contract whose rights or responsibilities are sought to be affected by the modification.” Tropicana Pools v. Boysen, 296 So.2d 104, 108 (Fla. 1st DCA 1974); Rauch v. Chama Invs., N.V., 641 So.2d 501, 502 (Fla. 4th DCA 1994). In the instant case, the Deferred Compensation Agreement clearly and unambiguously stated that Levin-son’s participation in the Deferred Compensation Agreement would not in any way affect or interfere with his right to share or participate in any retirement plan of the corporation. Further, regardless of whether Levinson had either actual or constructive knowledge of the disclaimer contained in the annual proxy statements that stated that pension benefits paid would be credited against amounts payable under the deferred compensation agreements, the terms of the Deferred Compensation Agreement could not be unilaterally modified by Carnival. Such a modification required a “meeting of the minds.” Therefore, by the terms of the Deferred Compensation Agreement, Levinson had a right to participate in both the Deferred Compensation Agreement and the Pension Plan, and to derive benefits from both. Accordingly, we reverse that portion of the final judgment finding in favor of Carnival and direct that judgment be entered in favor of Levinson.
As to the cross-appeal, Carnival contends that the Pension Plan at issue is a “top hat” pension plan, one that “is unfunded and maintained by the employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees,” 29 U.S.C. § 1051(2) (1998), and that as such, it is not one that is subject to the requirements of ERISA. We disagree.
Carnival properly characterizes its plan as a “top hat” plan, but its assertion that as such it is not subject to the requirements of ERISA is not entirely accurate. Although “top hat” plans are exempted from the substantive provisions of ERISA regarding participation, vesting, funding and fiduciary responsibility, “top hat” plans remain subject to the enforcement provisions of ERISA. Fasco Indus., Inc. v. Mack, 843 F.Supp. 1252, 1255 (N.D.Ill.1994); Black v. Bresee’s Oneonta Dep’t Store Inc. Sec. Plan, 919 F.Supp. 597, 602 (N.D.N.Y.1996).
Alternatively, Carnival contends that if ERISA’s enforcement provisions are applicable, the trial court still erred in finding in favor of Levinson because Levinson did not work the requisite number of hours for Carnival from 1989 to 1995 to credit him with more than one year of participation under the plan. Again, we disagree.
At trial, Levinson testified that from 1989 to 1995, he worked at Carnival’s office Monday though Friday, 9 a.m. to 5 p.m. He described his responsibilities as working with the security division on various security matters, being involved with Carnival’s casino operations, assisting the legal department with ongoing disputes of which he had knowledge, reviewing legal bills from outside counsel, and ensuring that financial statements were prepared in a timely fashion. Additionally, payroll records were submitted into evidence that showed that Levinson was paid throughout the years in question on a bi *1163 weekly basis and that he received reimbursements for expenses. Therefore, there was substantial, competent evidence to support the trial court’s finding that Levinson was entitled to six years of participation under the Pension Plan. Accordingly, we affirm that portion of the trial court’s final judgment.
Reversed, in part, with directions; affirmed, in part.